Good morning, Your Honor. May it please the Court, Joshua Salzman, on behalf of the Commissioner. This case turns on the proper construction of Section 3346A of the Federal Vacancies Reform Act. That provision prescribes the times during which an acting official can temporarily discharge the duties of a vacant office that can only be filled through the Senate confirmation. That provision has two subsections. Subsection A-1 dictates that for 210 days following the emergence of a vacancy, an acting official can serve, giving the President a reasonable opportunity to identify a nominee initially. Second, the statute further says that once a nominee has been submitted to the Senate, acting service is also permitted. Until the decision below, all three branches of government were in unison as to the proper relationship between these two provisions, namely, that they operate independently from one another. The decision below broke with that consensus and read the second subsection nearly as a tolling provision, extending the 210 days if they had not expired, but not allowing for active service once a nomination is submitted if the nomination is submitted after the 210 days have been completed. Since that decision has been come — has come down, numerous district courts across the country, including within this circuit and elsewhere, have examined that decision and rejected it as inconsistent with the plain language of the statute, and with good reason. Congress knows how to write a tolling provision. It has done so many times throughout the U.S. Code, and what Congress enacted here bears no resemblance to a tolling provision. Moreover, Congress knew in the Federal Vacancies Reform Act itself how to modify the operation of the 210 days. Two other provisions of the FVRA, which is not a lengthy statute, specifically speak and exemplify how Congress modified the 210 days when it wanted to do so. Section 3349A says that in the wake of a presidential  to start 90 days after inauguration. Another provision says that if the 210 days expire while the Senate is in recess, the last day is deemed to be the second day after the Senate returns. 3346A2 bears no resemblance to those provisions. It doesn't say that the 210-day period is deemed to operate differently. It simply says once a nominee is submitted, acting service is allowed. Accordingly, the district court was wrong in issuing this novel construction of the FVRA. Applying the basic legal principles and the construct, the correct interpretation of the statute to the facts of this case yields the conclusion that Nancy Berryhill was properly serving as the acting commissioner of Social Security at the time that she ratified the appointments of that agency's administrative law judges. Specifically, Nancy Berryhill served for 210 days after President Trump's inauguration. She then, as of November 2017, was no longer properly serving as the acting commissioner. But in April of 2018, President Trump submitted Andrew Saul's nomination to the Senate. That nomination was still pending as of July 2018 when the ratification order issued. Accordingly, under the near consensus view of the FVRA, the judgment below must be reversed and the district court's statutory construction should be set aside. If we agree with you, I understand what we would have to do is reverse and remand because the district court never did actually address the merits of the appeal, right? That's correct, Your Honor. There are other arguments. We're not asking for the litigation to come to a close. The underlying challenge to the disability determination remains pending, and I believe some other arguments were presented as well. Well, one was the constitutionality of the entire statute, right? The FMVR, whatever. Yeah, though that argument has not been raised as an alternative grounds. No, but was it fully briefed to the district court? It may have been, Your Honor. I'm honestly not sure. So do you have a position as to whether the record is sufficient for us to address that if we agree with you on this question? Or do you want to send it back and guarantee another appeal? So I think there are two issues that the record is sufficient for this Court to resolve. Those are the two issues that have been briefed. One is what is the proper construction of the FERA's time windows, and the second is the alternative grounds for affirmance that were raised in the red brief, and specifically the argument that Nancy Berryhill was never properly designated under Section 3345A to be the acting commissioner because the succession order signed by President Obama was insufficient to qualify as a designation under Section 3345A2 or A3. I'm happy to speak to that argument as well, which we do think it would be. We have no objection to the Court resolving that pure question of law which has been fully briefed here. To the extent that they raised other constitutional arguments that haven't been briefed, we think it would be inappropriate for the Court to reach out and decide those issues without at least calling for full briefing on those. If the Court has questions about our construction of Section 3346A and why the provision allows for two potential windows of service and does not require continuous service, I'm happy to speak to those. I'm also happy to offer argument on the alternative grounds for affirmance, whatever would be of most help or interest to the Court. I think it's better if we just take what's presented today. As you say, we can call for supplemental briefing if we think it's needed. Okay. And just briefly speaking to the alternative grounds for affirmance, there's no dispute here that there was a succession order that had been issued by a sitting President. That President was President Obama. But this was consistent with longstanding practice that predates the FVRA. And there's no reason to believe that Congress intended to break with that longstanding practice of Presidents proactively and prudently identifying the officials who should serve in the event of a vacancy. Have these issues come up in court before? Are there reported decisions on this? It doesn't seem unusual to me, having been in the Executive Office of the President many years ago. It's kind of the way things are done. But it does, I mean, it's a legitimate question to raise. I'm not aware of any judicial decisions on it. But as this is such a longstanding practice, I think the silence on that, if anything, just weighs in our favor in the fact that this predated the FVRA. And there's no reason to think that Congress wanted to interfere with the ability of the Executive Branch to prudently implement procedures so that there would be somebody standing by ready to fill a vacant office or to temporarily discharge the duties of a vacant office during time windows that were otherwise allowable under the statute. And, of course, the normal rule that's applicable to all presidential directives is that they survive the administration under which they were issued. Huge amounts of very important executive orders span from one administration to the other. So, for example, our system for dealing with classified material is largely not set forth in statute. It comes from executive orders. And nobody thinks the entire classification system is wiped out at the end of each administration. Presidential directives survive changes in administration. Of course, the next President is free to depart from what his predecessor chose to do. If President Trump had wanted to change SSA's order of succession or to identify somebody other than the Deputy Commissioner for Operations to be the acting official under Section 3345, he was free to do so. But that doesn't mean that there was not a valid designation here. Unless the Court has any further questions, I'm happy to reserve my time for rebuttal. I have to say I sort of smiled to myself when it occurred to me that the Department of Justice caused this problem in 1999 when it dubbed the provision a leap back. A springback, yes, Your Honor. Was there anything in the legislative history or was that just a brilliant DOJ observation that creates a very distorted view of this? I don't believe that phrase is used in the Senate report. As Your Honor noted, it is in that 1999 OLC opinion, and I think Your Honor is right that the phrase is potentially misleading. And I'm glad Your Honor appreciates that our construction of the statute doesn't turn on that. Thank you, Your Honors. Very good. Thank you. Mr. Subbaraman, do I pronounce that correctly? Subbaraman, Your Honor. Subbaraman. Thank you, Your Honor. Mahesha Subbaraman, representing Brian Dahl, plaintiff appellee in this matter. I want to start with addressing we obviously want the Court to affirm Magistrate Judge Schultz's sound interpretation of the 3346A2 statutory time limit here, which we construe as a tolling provision. And I know that opposing counsel opened his remarks by saying all three branches of government are in unison that this is a springback provision. I think that would come as something of a surprise to the U.S. Supreme Court, because in the NLRB v. SW General case, pages 936 to 937 of their decision, they describe what they understand A2 and A1 to do. And what they say is this. Other sections of the FVRA establish time limits on acting service and penalties for noncompliance. In most cases, the statute permits acting service for 210 days beginning on the date the vacancy occurs, tolls that time limit while a nomination is pending. Counsel, let's ---- Judge, that was clearly dicta, though. Wouldn't you agree? We agree, Your Honor, that it is dicta. But as this Court has said on Bank, the Court generally affords, when the Supreme Court speaks on a subject even in dicta, respect for what the Court is saying. And I think it is important to recognize, I think the government wants to cast this tolling interpretation as something beyond the ken, impossible to imagine to attribute to this provision. Is this Southwest General that you're ---- SW General. That's correct, Your Honor. And the Court repeats that language again in talking about the second nomination, the time limit tolls once more. Now, Judge Loken, I want to speak to a point that you raised towards the end of opposing counsel's remarks, where you asked a question about the legislative history. And if you want to look at the legislative history in this case, it shows that Congress knew how to enact a springback provision if it wanted to, but chose not to do so. The committee report that accompanies the ---- What's the legitimacy of calling it springback? There is no legitimacy of calling it a springback. We're using that as shorthand because that's how the government has characterized it throughout this litigation. Well, that's not the way the Iowa district court characterized it. Well, whether you want to call it a springback, a leap back ---- No, no. There's just a gap. Well, Your Honor, let me speak ---- If the provisions are independent. Right. And there's a gap. It's just simply a gap. Right. And we argue that there is ---- the way these provisions operate, there's a 210-day service period. If the President nominates someone during that 210-day period, then the person can serve beyond the 210-day limit. But if the President doesn't nominate someone during that 210-day period, then he has to resort to the ordinary process of nomination and confirmation. Now, to look at the legislative history for a moment, because I think it is instructive on this point, the Senate committee report that accompanied the original draft version of the Federal Vacancies Reform Act, it said that the bill's enforcement mechanism is to make an office vacant if 150 days after the vacancy arises, no presidential nominee has been submitted to the Senate for the office. The sanction can be ended if the President submits a nominee after the 150-day period, whereupon the acting officer can resume service. The text that they put into the statute to cement that point was under Section 3348, where they said, if the President does not submit a first nomination to the Senate to fill a vacant office within 150 days after the date on which a vacancy occurs, the office shall remain vacant until the President submits a first nomination to the Senate. That language appears nowhere in the final version of the bill that Congress ultimately passed and that the President signed. And I think it brings us to a point that, Judge Loken, you made in a case, in an opinion for the Eighth Circuit in 1992, in a case called Frey v. Omaha World Herald Company, 960 F. Second 1370, and this is at page 1378. You were speaking to a statute and a question of whether or not the statute could be applied in a retroactive manner or not. And you said, when a bill mandating retroactivity fails to pass and a law omitting that mandate is then enacted, the legislative intent was surely that the new law be prospective only. Any other conclusion simply ignores the realities of the legislative process. Here, in the original draft version of this FVRA, we had Congress expressly speak to the gap, the situation when the President allows this period of time to expire, doesn't nominate anyone. And then we had the Senate say in its draft text, the office shall remain vacant until the President submits a first nomination to the Senate. Congress then omitted that language entirely in the statute that it ultimately passed. And if you look at the language of 3348B1 as enacted, it simply says, the office shall remain vacant. And if you think about it, that's why the tolling interpretation makes sense here. You don't need a springback provision if the President nominates someone during the 210-day period. You only need a springback provision if there's a gap in service. But the provision in the statute that Congress understood to address the gap in service isn't in 3346. It's in 3348. And as a result of the intense negotiations that took place over how the bill should be drafted, the provision allowing for an acting officer to resume service after the President made a nomination following expiration of the initial time limit, that provision was simply lost. Now, was there a specific reason why Congress decided not to enact it? We don't know. The legislative history doesn't make that clear. But this Court generally doesn't implement Congress's unstated intentions when reading the statute. Kennedy. But after nomination, the President could have nominated, in your position, as I understand your position, anybody in the world except Burial. Well, under the FVR. Anyone who fits the 3345 eligibility. Essentially, Your Honor. The President could nominate anyone he has. Doesn't that strike you as kind of silly? In terms of, here we have a person that has done the job, that has been doing it, doing most of the job during the gap, and now there is the statutory entitlement for the President to have an acting agency person until confirmation. And the only one, and the absolutely best qualified person, from at least the President's standpoint, can't be picked. Well, Your Honor. Based on this highly technical interpretation of the statute. Respectfully, Your Honor, we don't think it's a highly technical interpretation. We think it is. Please don't. But I mean, why did they not put it back in, or why did they take it out? Well, maybe they thought it was superfluous. Well, Your Honor, let's look at the plain language of 3346 for a moment. Because I think what opposing counsel misses from his analysis of the statute is the initial prefatory clause that comes before the beginning of 3346A, and that happens once a nomination occurs. Well, now we're getting into serving versus may serve. Well, serving as. There are four words here that are key. I mean, I have carefully read the Minnesota and Iowa interpretations of serving and may serve. So go ahead. I want to just kind of underscore the point that this statute can't be abbreviated to the person may serve. Congress wrote the statute as the person serving as an acting officer, as described under 3345, may serve in the office. That language also reappears later on in the statute. And one of the cardinal principles. It seems to me that would suggest that you were wrong to agree with me that there is a new right to direct when there's a nomination. Well, Your Honor, I'd hope to clarify that, but let me, let me. There's no one that's serving at that point in time. That's correct, Your Honor. And let me be absolutely clear and retract whatever complication I may have introduced into the interpretation of 3346 and 3348. Our interpretation, as Judge Schultz explained it in his decision, establishes a uniform period of service. And under that uniform period of service, the person can serve 210 days, and that president nominates someone during the 210-day period. If the president does not do. Wait a minute. Are you now taking back your prior position and saying that the president is paralyzed in this situation? That's correct, Your Honor. And let me be absolutely clear on that. If he allowed the 200, if a succeeding president, with everything he's got to do in the place, carry over, so to speak, now he's paralyzed. Well, no, Your Honor. Now he has to wait for Senate confirmation of whoever he may not get around, not nominating. Well, let me. And we have, we have an agency without a, without a critical. Well, that's not true, Your Honor. There isn't complete paralysis under the statute. The statute says that the functions of an office that otherwise shall remain vacant, if they are delegable functions, they can be performed by lower functionaries. And that's what happened here. When Nancy Berryhill served. I understand that, but I, we're, but I'm talking about your, you know, appointment of ALJs. Sure. And, and. The president was paralyzed, is your view. Well, the president needed to nominate someone during the 210-day period, and barring that, he needed to nominate someone and then obtain Senate confirmation. Then he can't, then he can't, he can't do his, his Article II, he can't fulfill his Article II obligations indefinitely. Well, Your Honor, it's important to recognize that the Federal Vacancies Reform Act wasn't intended to protect or instantiate the president's Article II obligations. It was intended to protect the Senate's confirmation prerogative. Indeed, as, as, as a Supreme.  Well, it does, Your Honor. It helps your client. It doesn't do anything about protecting the integrity of the Senate confirmation. It absolutely does, Your Honor. And it doesn't. We disagree. Well, sure. Let's go on. But let me, let me just speak to why, very briefly, with your Court's indulgence. It does so because it provides the president a strong incentive to provide a nomination during the 210-day period. If he does that, his acting officer can continue to serve while that nomination is pending. If he doesn't submit someone during the 210-day period. I understand. Then it's an incentive to put someone who's quickly confirmable. But, Your Honor, I recognize, I see that my clock is counting down here, and I want to speak briefly to the non-direction argument, that the president has to be responsible for appointing someone. Opposing counsel is simply wrong when he says that longstanding practice can rewrite the plain language of the FVRA, which is essentially what he's arguing here. You'll notice that during his argument, he doesn't actually reference the statutory language which says the president and only the president may direct someone to serve as an acting officer. The government has conceded in this case that President Trump did not affirmatively direct Nancy Berryhill to serve as acting commissioner, and that the vacancy that she was filling arose during his administration, not during the Obama administration. So, to put this in kind of very simple hypothetical terms, imagine for a moment, after President Trump took office, former President Obama had just, you know, from wherever he was, issued an order saying, I want to appoint Nancy Berryhill as an acting officer. I don't think the DOJ would be here defending that appointment and saying, oh, yes, Obama can do that, and because Trump didn't say anything, therefore, it's a valid appointment. They would say, President Obama's authority to have anyone serve in this office ended when he left office. Now, if that's generally true, I don't see how you can interpret an executive order to have the same improper effect if that order came simply a few days after Obama left office. What's your response, though, to the argument that all sorts of executive orders survive from one administration to the other? Under your theory, every executive order terminates on January 20th. Not at all, Your Honor. Under our theory, appointments are the carve-out on all of this, and the reason why appointments are the carve-out on all of this is because under the Constitution, under Article 2, it says that the Congress may confer in the President, as it deems appropriate, the appointment of inferior officers. Congress has the reins here on the appointment of inferior officers, and we understand acting officers to be inferior officers, which is why they can be appointed by the President alone without Senate confirmation. So then the question becomes when Congress spells out the terms by which those appointments are to take place, then did the President comply with the plain text of the statute, which required affirmative direction? And the answer is no. But to come at this question another way, there's a very simple solution to the plain text implementation here to the extent the Court views it as a pragmatic problem. All President Trump had to do the day he took office was issue an executive order saying, I hereby ratify all of the succession orders that have been entered by my predecessors. I treat them as if they were my own. At that point, the goal of the Appointments Clause is fully served, because the Appointments Clause in the end is about securing executive accountability for appointments, being able to point to the President and say, you're the one who made this decision. We can hold you accountable for it. That type of appointment can't occur through inaction. So President Trump could have issued a ratification order, and he could have taken any other number of steps to endorse Nancy Berryhill's service during the four years that he was in office and during the two and a half years that Nancy Berryhill was serving. Marbury v. Madison teaches us in this context that appointments must be evidenced by an open, unequivocal act of the President. In arguing that this appointment is defensible, the government is essentially asking this Court to overturn over 200 years of settled constitutional law. We respectfully submit the Court should not do that, but if the Court is for whatever reason uncomfortable addressing this issue, we would ask the Court to remand it for the district court to decide in the first instance. The direction issue. The non-direction issue. That's correct, Your Honor. The lower court assumed that issue away. Have you happened to become aware of my recent decision in the State of Missouri v. Biden? I'm somewhat familiar with it, yes, Your Honor. Your position is rather contrary to that right of teaching, isn't it, that the Senate teaches? Well, Your Honor, we're not disputing that when a President is acting within areas of authority that the Constitution exclusively assigns to him, he has full authority. But appointments are different. Appointments are, at least with respect to inferior officers, controlled by Congress. Well, you were never there, obviously, in the transition situation. I appreciate that, Your Honor. But in a transition situation. And assuming there's a good transition team that the outgoing President has provided, they have to be aware of your theory and that it might win in the courts and then counsel an entirely unanticipated course of action that disrupts and gets in the way of the rest of transitioning. Not at all, Your Honor. As we point out in a brief, we point out that President Biden, literally a day before he took office, issued a press relief where he announced, here are the acting heads for all of the 32 major agencies of the government. And these orders of succession, they only affect acting heads. That's all that is at stake here. So if President Biden can identify and expressly name, here are the people who are going to be heading these agencies, either as acting officers or as full officers who are just holdovers. All right. We understand. I understand, Your Honor. Thank you for your time. Mr. Rebuttal? Just briefly, Your Honor, a few new points surfaced during Mr. Subaraman's argument. I honestly heard most of the things I would have said in response voiced already in questions from the Court. So I'm happy to address those issues, including that Southwest General was just providing a general description in dicta of a provision that wasn't before the Court. I'm happy to get into the legislative history debate. If the Court is interested, we think the plain text of the statute is sufficiently clear, and we've briefed it regardless to the extent the Court does feel it's necessary to get into those issues. How many offices within the federal government would be impacted by this particular provision and decision that we might issue? So there are roughly 1,200 offices within the executive branch that require Senate confirmation. Not every one of those is a political position that turns over at a change in administration, but a huge percentage of those are. So we're not just talking here about 32 agency heads. We're talking about assistant attorney generals in the Department of Justice. We're talking about various deputies. We're talking about the members of various boards and commissions. There is a huge number of these offices, so I think it's quite wrong and unrealistic to say that this is really just about, I think he said, 32 officials. There's really nothing else that I feel the need to address, so absent any further questions from the Court, I'd urge you to reverse. Thank you, Your Honors. Thank you, counsel. The case has been well briefed and very well argued.